Filed 8/12/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEOPLE FOR THE ETHICAL OPERATION OF PROSECUTORS AND LAW ENFORCEMENT et al., | G057546 |
| Plaintiffs and Appellants, | (Super. Ct. No. 30-2018-00983799) |
| v. | O P I N I O N |
| TODD SPITZER, as District Attorney, etc., et al., | |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Glenda Sanders, Judge; William D. Claster, Judge. Reversed.

ACLU Foundation of Southern California, Peter Eliasberg, Brendan Hamme; American Civil Liberties Union Foundation, Somil Trivedi, Mariana Kovel; Munger Tolles & Olson, Jacob S. Kreilcamp and John L. Schwab for Plaintiffs and Appellants.

Leon J. Page, County Counsel, D. Kevin Dunn, Rebecca S. Leeds, and Adam C. Clanton Deputies County Counsel for Defendants and Respondents.

\*          \*          \*

This appeal is from a dismissal following a sustained demurrer in plaintiffs' taxpayer suit against the Orange County District Attorney and the Orange County Sheriff. The complaint seeks injunctive relief to prohibit the operation of an alleged unlawful confidential informant program (CI program). The trial court ruled that plaintiffs, who are residents and taxpayers of Orange County, did not have standing to pursue taxpayer claims for waste under Code of Civil Procedure section 526a (section 526a), nor a petition for a writ of mandate under Code of Civil Procedure section 1085.

The *raison d'être* of taxpayer standing, as well as the related doctrine of public interest standing in mandamus proceedings, is to confer standing on the public at large to hold the government accountable to fulfill its obligations to the public. Here, plaintiffs allege defendants operate a CI program whose principal aim is to obtain confessions from the accused in defiance of defendants' statutory and constitutional obligations. The fundamental rights at stake fit comfortably within the doctrines of taxpayer and public interest standing. While it is true that individual defendants could challenge the CI program, the relief available to an individual defendant would be limited to that case, and, in any event, the law is well settled that the existence of parties with traditional beneficial interest standing does not deprive the public of taxpayer or public interest standing. Accordingly, we reverse.

FACTS

According to the operative complaint, "Plaintiff/Petitioner the People for the Ethical Operation of Prosecutors and Law Enforcement . . . is an association of residents of Orange County that includes at least one member who pays property taxes to Orange County." People for the Ethical Operation of Prosecutors and Law Enforcement is a watchdog group seeking to ensure Orange County law enforcement agencies comply with their constitutional and statutory duties. The other plaintiffs are three individuals

2

who are Orange County residents and who have various interests in ensuring the integrity of the criminal justice system. The first is Bethany Webb, the sister of one of the victims murdered by Scott Dekraai, whose prosecution was substantially prejudiced by an illegal CI program. (See *People v. Dekraai* (2016) 5 Cal.App.5th 1110 (*Dekraai*).) The second is Theresa Smith, an Orange County resident who founded an organization called the Law Enforcement Accountability Network after her son was killed by Anaheim, California police. The third is Tina Jackson, a resident of Orange County who founded an organization called Angels for Justice, which connects prisoners and their families with a wide array of services. The defendants are Todd Spitzer and Don Barnes who are the elected District Attorney and Sheriff respectively.[1] Both were sued in their official capacities.

The gist of the complaint is that the defendants operate an illegal and clandestine CI program. The basic structure of the alleged CI program is that the Sheriff recruits confidential informants from among the prison population. The Sheriff moves those informants near a criminal defendant to facilitate a surreptitious interrogation, notwithstanding that the defendant is represented by counsel, which renders the interrogations illegal under *Massiah v. United States* (1964) 377 U.S. 201, 206 (surreptitious interrogation of represented suspect violated his Sixth Amendment right to counsel). These informants often use threats of violence to elicit confessions in violation of *Arizona v. Fulminante* (1991) 499 U.S. 279 (confession coerced by threat of physical violence violated Fifth Amendment right against self-incrimination). The Sheriff then awards such informants with money, jailhouse perks, and "consideration," such as time off their sentences. The Sheriff keeps extensive logs of these interactions, but keeps those logs secret, even from the courts. The District Attorney uses information from these interrogations, despite knowing their illegality, and does not disclose information

---

[1] We refer to defendants as the District Attorney and Sheriff.

about the CI program to defendants, in violation of their discovery duties.  Plaintiffs allege, "The program, at its core, is designed and orchestrated in order to violate inmates' constitutional rights and to cover up these violations."

The complaint goes on to detail several cases in which plaintiffs allege individual defendants' constitutional rights were violated.  To the extent the details of those individual cases are relevant, we discuss them below.  The complaint's factual recitation concludes by alleging there are 146 cases after June 9, 2016, in which it appears the District Attorney failed to turn over required impeachment evidence pertaining to the CI program.

The complaint asserted nine causes of action, only three of which are still at issue on appeal.  The third cause of action is for a writ of mandate arising from defendants' violation of Penal Code section 1054.1, which requires, inter alia, the People to disclose exculpatory evidence in a criminal proceeding.  The sixth cause of action is for a writ of mandate arising out of defendants' alleged violation of Penal Code section 4001.1, subdivision (b), which prohibits law enforcement agencies from utilizing in-custody informants to elicit information from a criminal defendant.  The ninth cause of action is a taxpayer action under section 526a, alleging that the entire CI program constitutes a waste of public funds on an illegal operation.

The prayer for relief contains a litany of requests, including declaratory relief that the CI program violates various constitutional and statutory directives, two writs of mandate requiring defendants to comply with Penal Code sections 1054.1 and 4001.1, subdivision (b), and various types of injunctive relief.  Some of the requested injunctions are general, such as to comply with discovery obligations, or to prohibit the use of violence to coerce information from inmates.  Other requests are quite specific, such as a request for specific disclosures in every case in which a jailhouse informant provided information, another for an injunction requiring the Sheriff to maintain a

4

database of jailhouse informants, and still another to notify past defendants in which jailhouse informants were used that he or she may have a habeas claim.

Defendants demurred to the complaint. At the hearing on the demurrer, the court expressed concerns that none of the plaintiffs were criminal defendants or suspects in a criminal investigation, that the requested relief would violate the separation of powers between the judiciary and executive branches of government, and that the issues in the complaint were concomitantly being considered by courts handling cases of individual criminal defendants. In the end, the court issued a summary order sustaining the demurrer with leave to amend. Plaintiffs elected not to amend and the court entered a judgment of dismissal. Plaintiffs timely appealed.

DISCUSSION

Plaintiffs assert they have standing in two ways: as taxpayers, and under the public-right exception to the normal beneficial interest requirement for filing for a writ of mandate. We address each in turn. As we are reviewing a sustained demurrer, and as standing is a purely legal question, we review these issues de novo. (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 539 [demurrer]; *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73 [standing].)

*I. Taxpayer Standing*

Section 526a, subdivision (a), provides, "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the

5

commencement of the action, has paid, a tax that funds the defendant local agency, including, but not limited to, the following: [¶] (1) An income tax. [¶] (2) A sales and use tax or transaction and use tax initially paid by a consumer to a retailer. [¶] (3) A property tax, including a property tax paid by a tenant or lessee to a landlord or lessor pursuant to the terms of a written lease. [¶] (4) A business license tax."

"Section 526a provides a mechanism for controlling illegal, injurious, or wasteful actions by those officials. That mechanism, moreover, remains available even where the injury is insufficient to satisfy general standing requirements under section 367." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1249.) The California Supreme Court has "described [the statute's] purpose as '"enabl[ing] a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement."' [Citation.] In light of this purpose, it is crucial that the statute provide a '"broad basis of relief."' [Citation.] Accordingly, [the Supreme Court has] always construed section 526a liberally . . . in light of its remedial purpose." (*Id.* at p. 1251.)

At the outset, we note it is essentially undisputed that plaintiffs satisfy the text of section 526a. This is an action to obtain an injunction to prevent illegal waste against an officer of a local agency by residents who pay taxes in Orange County. Yet taxpayer suits, however liberally allowed, are nevertheless subject to some constraints.

*A. Civil Code Section 3369*

One constraint, which defendants contend applies here, is found in Civil Code section 3369, which provides, "Neither specific nor preventive relief can be granted to . . . enforce a penal law, except in a case of nuisance or as otherwise provided by law." Defendants contend that the complaint is essentially one for injunctive relief to enforce Penal Code sections 1054.1, subdivision (e) (compelling discovery of exculpatory evidence) and 4001.1, subdivision (b) (limiting the use of in-custody informants), and

thus runs afoul of Civil Code section 3369. But the cases interpreting the statute interpret the phrase "enforce a penal law" to refer to preventing crimes by potential defendants, not preventing unlawful conduct by law enforcement agencies.

The leading authority on the interaction of section 526a and Civil Code section 3369 is *Leider v. Lewis* (2017) 2 Cal.5th 1121. There, taxpayers alleged the Los Angeles Zoo violated Penal Code section 596.5 by abusing its elephants. (*Leider*, at p. 1126.) They sought injunctive and declaratory relief. (*Ibid.*) Our high court held the action was barred by Civil Code section 3369. (*Leider*, at p. 1137.)

In reaching that result, the court explained the background of Civil Code section 3369, noting that it is "'but the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved.'" (*Leider v. Lewis*, *supra*, 2 Cal.5th at p. 1130.) The reason equity will not intervene to prevent conduct that is "criminal in nature," is that "'the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. [Citations.] The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts.'" (*Id.* at p. 1131.) The court also placed emphasis on the consideration that "the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding." (*Id.* at p. 1133.) This is because "'[t]he prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. [Citation.] No private citizen, however personally aggrieved, may institute criminal proceedings independently [citation], and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused. [Citations.] An individual exercise of prosecutorial discretion is presumed to be

7

"'legitimately founded on the complex considerations necessary for the effective and efficient administration of law enforcement.'"'" (*Id.* at p. 1133.)

From this discussion, it is clear that Civil Code section 3369 is aimed at suits attempting to prevent criminal conduct. Indeed, in every case we could find where Civil Code section 3369 barred an action, the action aimed to prevent criminal conduct. (See *Perrin v. Mountain View Mausoleum Association* (1929) 206 Cal. 669 [injunction did not lie against the building of a mausoleum where the defendants had been criminally convicted of building the mausoleum in violation of local ordinances but continued to do so]; *International Etc. Workers v. Landowitz* (1942) 20 Cal.2d 418 [injunction did not lie against undercharging for cleaning services, which, by local ordinance, was made a misdemeanor crime]; *Nathan H. Schur*, *Inc. Schur v. City of Santa Monica* (1956) 47 Cal.2d 11 [no claim stated where plaintiff alleged city committed a crime by licensing gambling halls].)

*Animal Legal Defense Fund v. California Exposition & State Fairs* (2015) 239 Cal.App.4th 1286 threw the distinction between penal provisions and procedural provisions into sharp relief. There, taxpayers sought to enjoin a state agency from violating criminal animal cruelty laws found in in the Penal Code. (*Id*. at pp. 1291-1292.) In holding the taxpayers lacked standing to maintain the suit the court distinguished *Mendoza v. County of Tulare* (1982) 128 Cal.App.3d 403 (*Mendoza*), where the court permitted a taxpayer to challenge unsanitary and inhumane conditions at a county jail. The point of distinction was exactly the distinction we draw here: "Perhaps more significant is the nature of the Penal Code sections at issue in *Mendoza*. The plaintiffs alleged a failure to maintain a licensed physician in the jail in violation of Penal Code section 4023 and a lack of segregation of pretrial detainees from sentenced prisoners in violation of Penal Code sections 4001 and 4002, and implied the board of supervisors failed to provide sufficient funds for prisoners as required by Penal Code section 4015. [(*Mendoza,* at p. 421.)] These Penal Code provisions set forth guidelines governing

8

procedures and conditions applicable to the jail; none proscribed conduct that would subject defendants to criminal prosecution, as is the case with Penal Code sections 597 and 597t." (*Animal Legal Defense Fund*, at p. 1299.)

Similarly, here, plaintiffs are not seeking to enjoin conduct that would subject defendants to criminal prosecution. Penal Code sections 1054.1 and 4001.1, subdivision (b) regulate aspects of the way in which law enforcement agencies perform their duties, but they do not define crimes, nor do they prescribe criminal punishments. As a result, the concerns driving Civil Code section 3369—the lack of a jury trial, the comparatively lower burden of proof, and prosecutorial discretion—simply are not present.

Moreover, much of plaintiffs' complaint aims to enforce *constitutional* duties, which courts traditionally have permitted in the form of taxpayer suits.

For example, in *Wirin v. Parker* (1957) 48 Cal.2d 890, a taxpayer sued the Los Angeles chief of police to enjoin the use of a surveillance program that employed hidden microphones in violation of the Fourth Amendment. (*Wirin*, at pp. 891-893.) Our high court upheld the taxpayer claim, noting, "It is elementary that public officials must themselves obey the law. It has been expressly held in this state that expediency cannot justify the denial of an injunction against the expenditure of public funds in violation of the constitutional guarantees here involved." (*Id.* at p. 894.)

Similarly, in *Wirin v. Horall* (1948) 85 Cal.App.2d 497 a taxpayer was permitted to maintain a suit against the Los Angeles Police Department to enjoin their use of road blockades in which they unconstitutionally searched every vehicle passing through.

In *White v. Davis* (1975) 13 Cal.3d 757 (*White*) a taxpayer was permitted to maintain a suit against the chief of the Los Angeles Police Department to enjoin a surveillance program in which undercover officers posed as students at UCLA in order to gather information about the students and professors. This was deemed to violate

9

constitutional rights to speech and privacy. (*Id*. at pp. 760-761.) In finding the taxpayer had standing to make a claim (*id*. at p. 762), the court made the following apropos observation: "The use of section 526a as a means of challenging the legality of ongoing police investigatory activities has a long and firmly established heritage in this state" (*id.* at p. 763).

In *Mendoza, supra,* 128 Cal.App.3d 403, the court permitted a taxpayer to challenge unsanitary and inhumane conditions at a county jail, notwithstanding the fact that the suit also involved prisoners with a direct personal interest. "[T]he existence of directly affected individuals who might also have standing to sue does not preclude a taxpayer's suit." (*Id*. at p. 415.) "[D]irectly aggrieved parties and taxpayers have concurrent standing to bring suit to enjoin government action." (*Ibid.*)

In light of the purposes of Civil Code section 3369, the distinction between disallowing suits that attempt to enforce penal provisions, yet allowing suits to enforce procedural duties of a law enforcement agency, makes perfect sense. Here, plaintiffs are "challenging the legality of ongoing police investigatory activities," which "has a long and firmly established heritage in this state." (*White, supra,* 13 Cal.3d at p. 763.) Civil Code section 3369 does not bar plaintiffs' suit.


*B. Deference to Other Branches of the Government*

Defendants suggest a second restraint on taxpayer suits: the need to limit standing to avoid interfering with other branches of the government. Defendants' argument relies heavily on *Dix v. Superior Court* (1991) 53 Cal.3d 442 (*Dix*).

In *Dix* the defendant had been sentenced on a charge of assault with a firearm causing great bodily injury. Afterward, the defendant offered to provide crucial testimony against a drug kingpin if his sentence would be reduced. The district attorney agreed, and on the stipulation of all parties, the court recalled his sentence. The father of the victim, understandably unhappy about that development, filed a petition for a writ of

10

mandate, arguing that the statute the court relied on, former Penal Code section 1170, did not authorize recall of a sentence under these circumstances. The Court of Appeal agreed and issued the writ. (*Dix, supra,* 53 Cal.3d at pp. 447-450.)

Our high court reversed the judgment of the Court of Appeal. The court concluded the petitioner lacked standing on the principle that "neither a crime victim nor any other citizen has a legally enforceable interest, public or private, in the commencement, conduct, or outcome of criminal proceedings against another." (*Dix, supra,* 53 Cal.3d at p. 450.) The petitioner argued he had standing to file a writ of mandate under the public-right exception, which applies under the following circumstances: "'""where the question is one of *public* right and the object of the mandamus is to procure the enforcement of a *public* duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced.'"""[2] (*Id.* at p. 451.)

The court rejected that theory on two grounds. First, as a matter of law, that doctrine did not apply because "[t]he public prosecutor has no enforceable 'duty' to conduct criminal proceedings in a particular fashion." (*Dix, supra,* 53 Cal.3d. at p. 453.) Second, "we have made clear that 'public interest' standing must yield to paramount considerations of public policy." (*Id.* at p. 453.) "[R]ecognition of citizen standing to intervene in criminal prosecutions would have 'ominous' implications. [Citation.] It would undermine the People's status as exclusive party plaintiff in criminal actions, interfere with the prosecutor's broad discretion in criminal matters, and disrupt the orderly administration of justice." (*Id.* at pp. 453-454.)

*Dix* involved standing to petition for a writ of mandate under the public interest theory and thus has no direct application to taxpayer standing. Indeed, the *Dix*

---

[2]     We address this theory below in connection with plaintiffs' claims for writs of mandate.

11

court explicitly disclaimed any impact on taxpayer standing, stating, "[N]othing we say here affects *independent* citizen-taxpayer actions raising criminal justice issues." (*Dix*, *supra*, 53 Cal.3d at p. 454, fn. 7.) Nevertheless, defendants contend that our high court imported the *Dix* analysis into the taxpayer-suit setting in *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241 (*Weatherford*).

In *Weatherford*, a taxpayer challenged a city's practice of giving allegedly inadequate notice before impounding a vehicle. (*Weatherford*, *supra*, 2 Cal.5th at p. 1245.) At the time, section 526a provided standing to a resident who paid an "assessed" tax. The plaintiff rented property in the City of San Rafael (City), but did not own it, and thus did not pay an assessed property tax. (*Ibid*.) The City argued plaintiff, therefore, lacked standing to file a taxpayer suit. The trial court agreed and dismissed the suit. The Court of Appeal affirmed the judgment and our high court reversed. (*Id*. at pp. 1245-1246.)

It began by stepping back to view the forest from the trees: "To further illuminate the scope and significance of section 526a, we consider its provisions in light of the statute's larger legal context—a context encompassing the evolution of standing in California from its common law roots to its various statutory incarnations." (*Weatherford, supra*, 2 Cal.5th at p. 1247.) Broadly speaking, "Our standing jurisprudence . . . reflects a sensitivity to broader prudential and separation of powers considerations elucidating how and when parties should be entitled to seek relief under particular statutes." (*Id*. at p. 1248.) The court noted that it had, for example, broadly permitted public interest standing to petition for a writ of mandate, but also imposed limits on that standing commenting on *Dix*, *supra*, 53 Cal.3d 442: "Our decision in *Dix* thus illustrates the type of analysis required in determining standing's scope under a statutory right to relief. While this analysis is grounded in the statutory text, the text read in isolation can be insufficient to adequately capture the other prudential and separation of powers considerations that have traditionally informed the outer limits of standing.

12

This sensitivity to the larger context of standing is not only a method to better effectuate the Legislature's purpose in providing certain statutory remedies, but also marks a recognition of the sometimes competing interests at issue when considering whether a party may seek a judicial remedy against government officials." (*Weatherford*, at pp. 1248-1249.)

Turning to section 526a, the court reasoned, "Limiting individual plaintiffs' use of the statute to those who pay property taxes is simply incompatible with the recognized need to construe the statute broadly." (*Weatherford*, *supra*, 2 Cal.5th at p. 1251.) While the court declined to delineate what types of taxes satisfied the statute, it held that a generic allegation that the plaintiff paid assessed taxes was adequate. Importantly for our purposes, the court stated, "An allegation of direct tax payment to the defendant locality also *does not* implicate the competing interests underlying our approach to standing." (*Id.* at p. 1252, italics added.)

*Weatherford*, like *Dix*, has no direct application here in that *Weatherford* dealt with the type of tax that would confer standing, an issue the Legislature subsequently cleared up with an amendment to section 526a. (Stats. 2018, ch. 319.) Defendants here do not challenge plaintiffs' payment of qualifying taxes. Defendants contend, however, that *Weatherford* imported the *Dix* analysis into the law of section 526a, notwithstanding the statement in *Weatherford* that a "direct tax payment to the defendant locality also does not implicate the competing interests underlying our approach to standing." (*Weatheford*, *supra*, 2 Cal.5th at p. 1252.)

Assuming, without deciding, that *Weatherford* requires us to consider "broader prudential and separation of powers considerations elucidating how and when parties should be entitled to seek relief under" section 526a (*Weatherford, supra*, 2 Cal.5th at p. 1248), we see no "ominous" consequences to permitting plaintiffs' suit to proceed (*Dix, supra,* 53 Cal.3d. at p. 453). As the cases we discussed above illustrate, and as our high court has explicitly observed, "The use of section 526a as a means of

13

challenging the legality of ongoing police investigatory activities has a long and firmly established heritage in this state." (*White*, *supra*, 13 Cal.3d at p. 763.)

This case fits comfortably within that heritage. Plaintiffs allege that defendants have systematically employed unconstitutional methods of investigating crimes. An injunction against unlawful investigative methods cannot, by definition, interfere with the lawful exercise of defendants' duties. "It is elementary that public officials must themselves obey the law." (*Wirin v. Parker, supra*, 48 Cal.2d at p. 894.) As a result, we have no concerns about this lawsuit interfering with legitimate operations of the Sheriff's and District Attorney's office.

### C. Exclusive Concurrent Jurisdiction

Defendants make a related argument that this lawsuit should not be permitted because it will interfere with other pending criminal cases and thus fall afoul of the rule of exclusive concurrent jurisdiction. "The established rule of 'exclusive concurrent jurisdiction' provides that where two (or more) courts possess concurrent subject matter jurisdiction over a cause, the court that first asserts jurisdiction assumes it to the exclusion of all others, thus rendering 'concurrent' jurisdiction 'exclusive' with the first court." (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1175.) "'Justification for the rule [of exclusive concurrent jurisdiction] rests on practical considerations. If the identical cause of action is asserted by the same plaintiff in two suits, there is no doubt that the first court has priority, but this can rarely happen. What does happen is that parties to the same controversy or transaction . . . file separate suits on their individual causes of action, usually against each other. *Although their claimed rights and therefore their alleged causes of action are distinct, the issues are substantially the same, and individual suits might result in conflicting judgments.* The rule of priority is designed to avoid the unfortunate result[s]

14

of these conflicts by requiring, in effect, a *consolidation* of the separate actions in the court in which jurisdiction of the parties first attached." (*Ibid.*)

Here, given the allegation that the CI program is ongoing, defendants contend this case would involve consideration of constitutional violations occurring in cases currently pending before other departments of the superior court.

The flaw in this reasoning, however, is that the court here is not being called upon to make a ruling that would bind the defendants in those other cases. The only issues the court here will need to determine is whether the CI program is ongoing and whether it is unlawful. Current cases will provide evidence on those issues, and the court may form opinions about those cases, but it will not be required to make a ruling in a way that poses a risk of inconsistent directives. Moreover, the court here will not obtain jurisdiction over the individual defendants in concurrent cases, and thus there will be no concurrent jurisdiction with its attendant risk of inconsistent judgments. Consequently, the rule of exclusive concurrent jurisdiction simply does not apply.[3]

The real risk here, if it could be called that, is that two departments of the superior court may form different legal opinions about the legality of the CI program. But that sort of risk is inherent in judicial systems, like ours, that do not adhere to horizontal stare decisis. That is not a sufficient basis to deny plaintiffs standing to pursue their claims.

Defendants' argument is analogous to the court's holding in *Di Suvero v. County of Los Angeles* (1977) 73 Cal.App.3d 718 (*Di Suvero*), which our high court subsequently overruled in *Van Atta v. Scott* (1980) 27 Cal.3d 424 (*Van Atta*). In *Di Suvero* a taxpayer brought an action against superior court judges and a county to enjoin

---

[3] Defendants' argument also suffers from absurd logical consequences. If any court considering the legality of the CI program obtained exclusive jurisdiction over the issue, then literally only one court at a time could consider it. Even if it were an issue in multiple criminal matters.

15

a local policy requiring criminal defendants to sign a particular form before proceeding in propria persona, which allegedly limited a defendant's right of self-representation. (*DiSuvero*, at pp. 719-720.) The trial court sustained a demurrer, and the Court of Appeal affirmed. (*Id*. at p. 722.) It observed that taxpayer standing exists to restrain executive actions that may otherwise go unchallenged. "But, turning to the case presently before this court, the validity of the court policy embodied in the challenged petition is a potential issue in every criminal case in which a defendant elects to represent himself. Such a defendant not only has standing but is already before the court and has open to him immediate and plenary recourse within the judicial system with respect to any claimed violation of his constitutional rights. [Citation.] Resort to a taxpayer's action is unnecessary in a matter such as this where a ready hearing is available to a person directly affected by the court policy which plaintiff seeks to challenge in the present case." (*Id.* at p. 721, fn. omitted.) This is like the argument defendants make here.

However, *our high court rejected that reasoning.* "[T]he *Di Suvero* taxpayer was not a defendant in any criminal action and, therefore, had no other forum in which to press his claim. More importantly, the threat of a collateral attack upon a pending action was not present in *Di Suvero*, since that taxpayer's suit did not contest the outcome of a particular case." (*Van Atta, supra,* 27 Cal.3d at p. 449.) "The holding in *Di Suvero* is contrary to the many cases in which this court has upheld a taxpayer's right to bring a suit despite the existence of directly affected potential litigants." "This court reaffirms that taxpayers may maintain an action under section 526a to challenge an illegal expenditure of funds even though persons directly affected by the expenditure also have standing to sue. To the extent that *Di Suvero* [is] inconsistent with this rule, [it is] hereby disapproved." (*Ibid.*)

We draw attention to the court's comment that "the threat of a collateral attack upon a pending action was not present in *Di Suvero*, since that taxpayer's suit did not contest the outcome of a particular case." (*Van Atta*, *supra*, 27 Cal.3d at p. 449.)

16

That same observation applies here. Plaintiffs' action does not threaten to undermine the current criminal cases that may be relevant to plaintiffs' claims because plaintiffs are not contesting the outcome of any particular case. Accordingly, the existence of pending criminal cases is no bar to plaintiffs' taxpayer claim.

In sum, none of the restraints on taxpayer claims asserted by defendants apply here. Plaintiffs satisfy the basic requirements of a taxpayer claim under section 526a and thus have standing to pursue their ninth cause of action.

## II. Writs of Mandate

Plaintiffs' third and sixth causes of action seek writs of mandate for alleged violations of Penal Code sections 1054.1 and 4001.1, subdivision (b), respectively. "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085, subd. (a).) "Mandamus . . . is the traditional remedy for the failure of a public official to perform a legal duty." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) "Mandamus will not lie to control a public agency's discretion—that is, to force the exercise of discretion in a particular manner—but it will lie to correct abuses of discretion." (*California Public Records Research, Inc. v. County of Stanislaus* (2016) 246 Cal.App.4th 1432, 1443.) [T]he judicial inquiry in an ordinary mandamus proceeding addresses whether the public entity's action was arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law." (*Id.* at p. 1443.)

17

Normally, to have standing to petition for a writ of mandate, the petitioner must be "beneficially interested." (Code Civ. Proc., § 1086 [the writ of mandate "must be issued upon the verified petition of the party beneficially interested"].) The petitioner must "have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] This standard, [the California Supreme Court has] stated, 'is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence that it has suffered "an invasion of a legally protected interest that is [both] '(a) concrete and particularized, and (b) actual or imminent . . . .'"'" (*People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 986.) Plaintiffs do not claim such an interest here.

Notwithstanding this requirement, """"where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced."""" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166.) "This '"public right/public duty' exception to the requirement of beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citations.] We refer to this variety of standing as 'public interest standing.'" (*Ibid.*) Here, plaintiffs claim public interest standing.

A court may deny public interest standing, however, where "the policy underlying the exception [is] outweighed . . . by competing considerations of a more urgent nature . . . ." (*Green v. Obledo* (1981) 29 Cal.3d 126, 145.) "[W]here the claim of 'citizen' or 'public interest' standing is driven by personal objectives rather than 'broader public concerns,' a court may find the litigant to lack such standing." (*SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1057.) Thus, for example,

18

as we already saw in *Dix, supra,* 53 Cal.3d 442, the California Supreme Court denied standing where the victim of a crime sought a writ of mandate to vacate an order recalling a defendant's sentence. The court reasoned that the practical consequences of permitting individual citizens to impinge on the discretion traditionally afforded a prosecutor would lead to "ominous" consequences. (*Id.* at pp. 453-454.)

Before we reach the question of whether plaintiffs meet the requirements of public interest standing here, we take a moment to address the proper standard of review. We are aware of two Courts of Appeal that have reviewed a trial court's determination of standing for abuse of discretion. (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174; *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 874 (*Reynolds*).) We disagree with their analysis, however, and conclude, instead, the proper standard of review is de novo.

We reach this conclusion for a few reasons. First, standing is typically a question reviewed de novo. (*San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.) Second, standing usually arises in the context of a demurrer, which we review de novo. (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 539.) Third, Courts of Appeal typically review important questions of public policy de novo because the appellate process is better suited to deciding such questions: we have more justices looking at the question with more time to review it. Moreover, such questions usually do not depend on particular facts, and thus the trial court's advantage of seeing evidence firsthand does not come into play. (See, e.g., *Carter v. Escondido Union High School Dist.* (2007) 148 Cal.App.4th 922, 929 [in a claim for wrongful termination in violation of public policy, "[w]hether the policy upon which a wrongful termination claim is based is sufficiently fundamental, well-established and tethered to a statutory or constitutional provision to support liability is a legal question that we review de novo"]; *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1252 ["In determining whether an arbitration award contravenes

19

public policy, we review the trial court's decision de novo"]; *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 9 ["the issue of whether the waiver of statutory rights [in an arbitration agreement] violated public policy presents a legal issue that we review de novo."]; *Tunstall v. Wells* (2006) 144 Cal.App.4th 554, 561 ["we review de novo whether the Trust's no contest clause violates public policy"].)

The two cases holding otherwise provide no analysis for utilizing an abuse of discretion standard of review. *Citizens for Amending Proposition L v. City of Pomona, supra,* 28 Cal.App.5th 1159, 1174 merely cited *Reynolds*, *supra*, 223 Cal.App.4th 865, 874 without analysis. *Reynolds*, in turn, simply stated, "Even if we were to assume that the public interest exception could properly be extended to provide standing in this context, application of the doctrine is still discretionary. As noted *ante,* even if a plaintiff otherwise meets the requirements of the public right/public duty exception in a mandamus proceeding, he is not entitled to proceed "as a matter of right." [Citation.] "[T]he policy underlying the [public interest] exception may be outweighed in a proper case by competing considerations of a more urgent nature . . . ." (*Reynolds*, at pp. 874-875.) But the fact that a trial court may deny standing based on public policy considerations has no bearing on the question of how we review that determination. For the reasons stated *ante*, the proper standard of review is de novo.[4]

---

[4] It is possible that some confusion arose from the fact that *issuance of the writ* is an equitable remedy within the court's discretion. Issuance of a writ of mandate """"is not necessarily a matter of right, but lies rather in the discretion of the court, but where one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, [the petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it.""" (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 114.) Whether a party has standing to make a claim, however, is a separate question from the ultimate disposition on the merits.

20

Turning to the standing question here, we conclude plaintiffs have standing to pursue their claims for a writ of mandate. The operative complaint describes a surveillance program in flagrant disregard of the government's constitutional duties and limitations. Plaintiffs allege that defendants have gone so far as to permit confidential informants to threaten to *kill* defendants if they do not confess to a crime, and they then compounded the transgression by actively concealing the existence of the CI program. We would be hard pressed to think of a more outrageous constitutional violation. Plainly, the constitutional rights the CI program is alleged to have violated—the rights to due process and the assistance of counsel, among others—are public rights that every citizen has an interest in upholding.

The only countervailing public policy interest that defendants assert here is the same argument we encountered above: that this case will interfere with ongoing criminal cases. But as we already observed, the complaint does not seek any orders in any pending cases. Any such orders would be prohibited under *Dix*, *supra*, 53 Cal.3d, 442. Instead, as we interpret the complaint, it seeks orders to restrain ongoing programs and policies that are systematically violating defendants' constitutional rights. The existence of policies and programs that systematically violate constitutional rights may be attacked without directly interfering in any particular criminal proceeding. In the absence of any countervailing public policy reasons, plaintiffs have public interest standing to challenge the CI Program.

III. *Sufficiency of the Complaint*

Defendants' final attack on the complaint is that it fails to state a cause of action for two reasons: It fails to allege a current program (as opposed to a previously existing program), and it is barred by the statute of limitations. Neither argument is persuasive.

21

Defendant's first argument—that the complaint fails to allege a current program—suffers from the problem that the complaint repeatedly alleges a current program. Defendants attempt to get around this obvious flaw by arguing that allegations based on information and belief are inadequate. Defendants cite *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, which states, "A '"[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, *if he has information leading him to believe that the allegations are true*"'" [citation], and thus a pleading made on information and belief is insufficient if it 'merely assert[s] the facts so alleged without alleging such information that "lead[s] [the plaintiff] to believe that the allegations are true."'" (*Id*. at pp. 1158-1159.) But plaintiffs more than met this burden. In addition to alleging a CI program spanning over 30 years, plaintiffs allege an investigation that unearthed 146 cases after June 9, 2016, in which defendants committed violations similar to those described in *Dekraai*, *supra*, 5 Cal.App.5th 1110.[5] These allegations were plainly sufficient to support an allegation of an ongoing CI program.

In a related argument, defendants contend the complaint is barred by the statute of limitations. That argument is easily met, however, by the observation that the complaint seeks to restrain a current, ongoing program. Plaintiffs are not seeking damages for past acts. Plainly, the statute cannot have run to restrain a violation that is ongoing.

---

[5]     For point of reference, *Dekraai* was filed November 22, 2016. The original complaint in this matter was filed April 4, 2018.

DISPOSITION

The judgment is reversed.  Plaintiffs shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.